In the Matter of the Application of the ROCHESTER, HORNELLS-VILLE AND LACKAWANNA RAILROAD COMPANY, Respondent, to Acquire Title to Lands of FRANCIS G. BABCOCK et al., Appellants.

Where, in proceedings to condemn land for railroad purposes, it appears that one of the subscribers to the capital stock of the petitioner is a corporation, and that its subscription is essential to make up the required amount, in the absence of any proof it may not be presumed against the act of the corporation and its payment of the percentage required that it acted beyond its powers.

As to whether the land owners can raise or try the question, *quære.*

In such proceedings it appeared that the petitioner filed its map and profile July 13, 1886, and served notice upon B., the land owner, and in due season filed its certificate of location. On August tenth thereafter B. leased to the N. Y., L. E. & W. R. R. Co., another railroad company, for three years, the right to lay a track across his premises to a brick yard, the owners of which had made verbal application for a switch, and on the day last named made a written application. The switch was con-structed immediately across B.'s lands, but did not reach the brick yard, as another land owner, whose lands it was necessary to cross, refused to assent. Such switch where it crossed the petitioner's line was at first torn up, but was replaced by said lessee and cars run upon it to defend its possession. *Held,* that the facts did not establish such an occupation of the switch for a public use by said lessee as would bar a condemnation by the petitioner.

Lands held by a railroad corporation, but not used for or necessary ¡to a public purpose, may be taken by another similar corporation for railroad purposes as if held by an individual owner.

The need of the land in aid of collateral enterprises, remotely connected with the running or operating of a railroad, will not justify an assertion of the right of eminent domain.

Also, *held,* that proof of an attempt to settle with the land owner and its failure, was sufficient without showing any negotiation with the lessee.

(Argued June 5, 1888; decided June 19, 1888.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of June, 1887, which affirmed an order of Special Term appointing commissioners to acquire title to lands for railroad purposes. (Reported below, 45 Hun, 126.)

The facts, so far as material, are stated in the opinion.

*James H. Stevens, Jr.,* for appellants. The New York, Lake Erie and Western Railroad Company had such a prior vested right in and to the lands under the lease and grant from Francis G. Babcock, and its railroad track actually constructed by it thereon, and such a possession thereof that the same became impressed under the authority of the sovereign with a public use and one that cannot be nullified by any authority to a junior corporation to take the lands again for another exclusive use, and thereby cut off its rights and those of the proprietors of the brick plant. (Colby N. Y. R. R. Law, 129, 173, 179; *In re Syracuse, etc., Co.,* 4 Hun, 312; *City of New York* v. *Mapes,* 6 Johns. 46; *T. & B. R. R. Co.,* v. *B. H. T. & W. R. Co.,* 86 N. Y. 126.) The proceedings as against the appellant railroad company should have been dismissed without prejudice to institute new proceedings for crossing the railroad track or switch in a proper proceeding therefor. (Colby R. R. Law, 204, §§ 1, 2; Laws of 1880, chapters 133, 583.) By continuing a party to this proceeding the rights of the appellant railroad company are wholly gone and the switch destroyed without remedy. (*In re N. Y. & W. S. R. R. Co.,* 94 N. Y. 290; 33 Hun, 281; *In re Pool,* 5 Civil Pro. Rep. 284; *Rensselaer R. R. Co.* v. *Davis,* 43 N. Y. 147; 39 id. 171; 53 id. 574; 64 id. 574; 68 id. 557; 79 id. 64, 68; 77 id. 557; 1 Seld. 439, 440; *In re Lockport & Buffalo R. R. Co.,* 77 N. Y. 557; 79 id. 64.) The payment of ten per cent of the capital stock required must be in "money" or "cash," which is equivalent, and not in property. (Colby R. R. Law, 12, 76, 149; *Farnham* v. *Benedict,* 13 N. Y. 455; *In re N. Y. & O. M. R. R. Co.* v. *Horn,* 57 id. 476; *In re N. Y. C. R. R. Co.,* 66 id. 411; *In re N. Y. Cable Co.,* 4 id. 330; *In re N. Y., L. & W. R. R. Co.,* 35 Hun, 224.) The petition was not sufficient to show a necessity for the exercise of the power to take lands outside of the right of way and to change the course of a river declared by statute to be a public highway. (8 Barb. 242; Colby R. R. Law, 179, § 1; Laws of 1881, chap. 649; *In re N. Y. C. R. R. Co.,* 5 Hun, 89.)

*Frank S. Smith* for respondent. Statutes delegating the right of eminent domain to private corporations, being in derogation of common right, are to be strictly construed, but not so literally as to defeat the evident purposes of the legislature. (*N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546; *In re N. Y., W. S. & B. R. R. Co.*, 64 How. Pr. 216.) In proceedings to acquire lands the statute does not require separate descriptions depending upon the several interests of the parties. (*In re N. Y., W. S. & B. R. R. Co.*, 64 How. Pr. 216.) The court had power to amend the petition by adding the places of residence of the parties interested in the lands sought to be acquired. (Laws of 1850, chap. 140, §§ 14, 20; *In re N. Y., W. S. & B. R. R. Co.*, 89 N. Y. 453; *S. C.*, 64 How. Pr. 216; *Grand J. R. R. Co.* v. *Comrs. of Middlesex*, 14 Gray [Mass.] 553; *Boyd* v. *Negley*, 40 Penn. St. 377; *In re City of Buffalo*, 78 N. Y. 362.) The case at bar is a special proceeding. (*N. Y. C. R. R. Co.* v. *Marvin*, 11 N. Y. 276.) There is no statutory prohibition against any amendment in these proceedings. (Code Civ. Pro. §§ 723, 724; *Viadero* v. *Viadero*, 7 Hun, 313.) As no issue was made by the answer as to the organization of the appellant railroad company no proof on the subject was necessary. (Code Civ. Pro. § 1776; *In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 12.) The allegations of the petition as to the subscription to stock made a *prima facie* case, and the burden is upon the respondents. (*In re N. Y., L. E. & W. R. R. Co.*, 99 N. Y. 12; *In re N. Y. C. R. R. Co.*, 66 id. 407.) The most that can be required of the petitioner is to show a *prima facie* subscription in good faith of the necessary amount; and if the fact of such subscription can be controverted, or if the competency of any subscribing parties can be questioned in a proceeding of this nature, the burden rests upon the landowners to disprove the alleged subscriptions and to show that the corporation subscribing was not duly organized or qualified to make such subscriptions. (Laws 1867, chap. 515, § 1; *In re N. Y. C. R. R. Co.*, 66 N.Y. 407; *In re N. Y., L. E. & W. R. R. Co.*, 99 id. 12; *Sodus*

*Bay & Cor. R. R. Co.* v. *Hamlin*, 24 Hun, 390; *In re Staten I. R. T. Co.*, 38 id. 381, 383; Field on Corporations, § 61; *Bank of U. S.* v. *Planters' Bank of Ga.*, 9 Wheat. 907; Angell & Ames on Corporations, § 95; *Swartout* v. *Mich. Air Line R. R. Co.*, 24 Mich. 389; *Buffalo & Pitts. R. R. Co.* v. *Hatch*, 20 N. Y. 157; *Milbank* v. *N. Y., L. E. & W. R. R. Co.*, 64 How. Pr. 20; *Lake Ont., Aub. & N. Y. R. R. Co.* v. *Moss*, 16 N. Y. 451; *Phil. & Westchester R. R. Co.* v. *Hickman*, 28 Penn. St. 318; *Union Hotel Co.* v. *Hersee*, 79 N. Y. 454.) The payment of ten per cent on the necessary subscription was properly proved. It could as well be made by the transfer of credit as the actual delivery of cash, and in either case the payment could be proved by the party making it. (*Collins* v. *Rockwood*, 64 How. Pr. 57; *Van Cott* v. *Van Brunt*, 2 Abb. N. C. 283; *Beach* v. *Smith*, 30 N. Y. 115, 116; *Phil. & M. C. R. Co.* v. *Hickman*, 28 Penn St. 54; *In re S. I. R. T. Co.*, 38 Hun, 381; *Lake Ontario, A. & N. Y. R. R. Co.* v. *Moss*, 16 N. Y. 451; *Eastern Plank R. Co.* v. *Vaughan*, 14 id. 546; *Ogdens., R. & Clay R. R. Co.* v. *Frost*, 21 Barb. 541; Pierce on Railroads, 75; *Syracuse, Phœnix & O. R. R. Co.* v. *Gere*, 4 Hun, 392; *Kerr* v. *McGuire*, 28 N.Y. 446; Abbott's Trial Ev. 310.) The testimony of the witness Cleflin, that on the twenty-seventh and twenty-eighth days of August, as the agent for the petitioner, he made *bona fide* attempts to agree with Mr. Babcock for the purchase of the lands sought to be acquired, and that Mr. Babcock received the propositions in such a spirit as showed conclusively that there was no use of making any further attempt to acquire title by purchase was sufficient negotiation with Babcock. (*In re Prospect Park & C. I. R. R. Co.*, 67 N. Y. 371; Pierce on Railroads, 181.) Negotiation with the owner of the fee is sufficient, and no negotiation with the lessee is necessary. (Laws of 1850, chap. 140, §§ 13, 14; Laws of 1854, chap. 282, § 4; Laws of 1882, chap. 82, § 1; Pierce on Railroads, 181; *In re P. P. & C. I. R. R. Co.*, 67 N. Y. 371; *In re N Y. C. R. R. Co.*, 20 Barb. 419, 427; *In re N. Y., W. S. & B. R. R. Co.*, 35

Hun, 638; *In re N. Y. C. & H. R. R. R. Co.*, 35 id. 306; *In re William and Anthony Sts.*, 19 Wend. 632; *In re Village of Middletown*, 82 N. Y. 196; Mills on Eminent Domain, § 65.) The referee was right in his ruling that the "priority of the respective rights of the petioner and the respondent" company was not within his province. (*In re N. Y. W. S. & B. R. R. Co.*, 35 Hun, 306; *In re N. Y. C. R. R. Co.*, 20 Barb. 419.) The petitioner has the right to and will acquire by this proceeding the entire fee of the land in question, discharged of any rights in the appellant company under its lease for the term of three years. (*R. H. & L. R. R. Co. v. N. Y., L. E. & W. R. R. Co.*, 44 Hun, 210.) The Erie company could not acquire land for this switch under the power of eminent domain. (Laws 1850, chap. 140, § 21, 28, as amended; *Rens. & Sar. R. R. Co. v. Davis*, 43 N. Y. 132; *N. Y. & H. R. R. Co. v. Kip*, 46 id. 546; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 248; *N. Y. C. & H. R. R. R. Co. v. M. G. L. Co.*, 5 Hun, 201; *Currier v. Marrietta & Cin. R. R. Co.*, 11 Ohio, 228; *Chi. & E. Ill. R. R. Co. v. Wiltse*, 24 Am. & Eng. R. Cases, 261; 1 Wood's Ry. Law, 658.) One railroad company can condemn land of another railroad company which is not held for public use. (Pierce on Railroads, 152; *N. Y. C. & H. R. R. R. Co. v. M. G. L. Co.*, 63 N. Y. 326; *In re Rochester Water Commissioners*, 66 id. 413; *In re N. Y., L. & W. R. R. Co.*, 99 id. 12.) The question whether any particular piece of land is necessary, within the terms of the statute, is one for judicial determination. (*Rens. & Sar. R. R. Co. v. Davis*, 43 N. Y. 137; *In re N. Y. C. R. R. Co.*, 66 id. 407.) It is only necessary for the railroad company to show that the lands sought are legitimately and in good faith required for the construction or operation of the railroad. (*N. Y. & H. R. R. Co. v. Kip*, 46 N. Y. 546, 552; *N. Y. C. & H. R. R. R. Co. v. M. G. L. Co.*, 63 id. 326; *In re Boston and Albany R. R. Co.*, 53 id. 574; *In re S. I. R. T. Co.*, 3 id. 48.) Damages which Babcock will suffer from the proper construction of the railroad can be awarded by the commissioners appointed herein. For any

damages from an improper construction of the railroad Babcock will have his action. (Laws 1850, chap. 140, § 28, subd. 5, as amended; Laws 1864, chap. 582, § 1, as re-enacted by Laws of 1880, chap. 133; *Troy & Boston. R. R. Co.* v. *N. T. Co.*, 16 Barb. 100, 104; 1 Rorer on Railroads, 401; *People ex rel. Green* v. *D. & C. R R. Co.*, 58 N. Y. 154; *In re N. Y., W. S. & B. R. Co.*, 101 id. 685; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42; *Cott* v. *Lewiston R. R. Co.*, 35 id. 214; *Norris* v. *Vt. Cen. R. R. Co.*, 28 Vt. 99; Ang. on Watercourses, § 465; Pierce on Railroads, 203; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 351.) The petitioner is authorized by the statute to acquire the extra lands for the purpose of cuttings and embankments as it proposes. (*N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546; *N. Y. C. & H. R. R. R. Co* v. *M. G. L. Co.*, 63 id. 826; *In re B. & A. R. R. Co.*, 53 id. 574; *In re S. I. R. T Co.*, 3 id. 48.)

FINCH, J. The petitioner alleged its due incorporation, the necessary subscription to its capital stock, and the payment of the ten per cent required. It further averred its need of the land sought to be condemned for the purposes of its road, and an unsuccessful effort to agree with the land owner upon the damages to be paid. The latter denied these allegations, partly upon information and belief, and the issues thus raised were tried and decided in favor of the petitioner. We need not delay over the question argued as to the burden of proof, for the petitioner established its case beyond the need of resting upon presumptions. While the evidence it gave has been somewhat criticised, there seem to be but one or two points about which the argument made demands our attention.

The principal subscription to the stock, and one essential to the required amount, was that of the Central Construction Company, the validity of whose contract is questioned on the ground that it is a foreign corporation, having no power to subscribe to the stock of a railroad company. The appellants claim upon the evidence, that the Construction Company is a corporation formed under the laws of New Jersey. Whether

it is in truth a partnership or joint-stock association or a corporation, is not at all certain or accurately disclosed, but, conceding its corporate character, there is still no proof of its want of power. Its charter is not shown nor the law of its organization. Its business is stated to be the construction of railroads, as its name implies, and it would be quite strange if it could not subscribe to the stock of the roads which it can build. At all events we cannot presume against its acts and the payment of $40,000 actually made upon its subscription in money and equipment that it acted beyond its power. It is not before the court, it does not deny or dispute its liability, and it is difficult to see how the land owner can raise or try the question; yet, if that be possible, no presumption of want of power can be indulged in the face of an actual subscription followed by more than ten per cent of payment.

It is claimed, however, that the cash payment of $21,000 by Chapman is not satisfactorily proved. He swears that he paid it by causing his bankers to transfer that amount of his own money on deposit with them to the credit of the petitioner. He adds that the transfer was actually made, that a receipt was given for it, that it was applied as it was paid upon the stock subscriptions and remains intact in the possession of the petitioner as a deposit to its credit upon the books of the bankers. These facts are not contradicted beyond some criticism upon the manner in which the business was done, and comment upon the absence of books and papers, the need of which might not have been anticipated. It is quite evident that we ought not, upon grounds so slight, to distrust the finding of the referee, confirmed by the court, that the required ten per cent was paid.

The appeal of the Erie Railway Company raises another and different question, founded upon the claim that under its lease from Babcock, the land owner, and by reason of the switch constructed to communicate with a brick yard, it has a prior right for a public use which the petitioner cannot invade. The latter filed its map and profile on the 13th day

of July, 1886, and on the seventeenth served notice of such filing upon Babcock, and in due season filed its certificates of location. On the tenth of August the Erie Company took a lease from Babcock for the term of three years of the right to lay a track across his premises toward a brick yard. The owners of that plant had made verbal applications for a switch, and on the tenth of August made a written application. That was granted with such willing promptness that the lease is dated that day, and the switch was constructed immediately, the work beginning within two or three days thereafter. It did not, however, reach the brick yard because Mrs. Emery, whose lands it was necessary to cross, refused her assent and served an injunction to prevent the intrusion on her land. The switch thus constructed was at first torn up where it crossed petitioner's line, and then replaced by the Erie and cars run upon it to defend its possession. The General Term say in their opinion that the question of priority between the two companies has been tried in a separate action and decided against the Erie, and that case is here on its own appeal.

Upon the facts disclosed, however, we are of opinion that the appellant corporation did not establish such an occupation of the switch for a public use as would bar a condemnation by the petitioner. Lands held by a corporation, but not used for, or necessary to, a public purpose, but simply as a proprietor and for any private purpose to which they may be lawfully applied, may be taken as if held by an individual owner. (*Matter of Rochester Water Comrs.*, 66 N. Y. 418.) The need of the land sought in aid of collateral enterprises, remotely connected with the running or operating of the road, will not justify an assertion of the right of eminent domain. (*Rens. & Sar. R. R. Co.* v. *Davis*, 43 N. Y. 137.) The whole subject has been recently and fully discussed in *In re Niagara Falls and Whirlpool Railroad Company* (108 N. Y. 375), and the limits of judicial control defined. In the case at bar the lease taken was brief and temporary, the lessor, a complaining landowner, and the lessee watching a competitor; the building of the switch so swift and prompt as to indicate

a design of obstruction; the purpose asserted that of convenience to the owners of a brick yard in which no · public use was involved; even that purpose inchoate and barred by the refusal of Mrs. Emery, and the brick yard not even reached; the switch needless for the general purposes of the company and no such expected use asserted; and the occupation for private gain and for individual convenience. A switch may be needed for the storage of cars or making up of trains, or for access to docks, warehouses and elevators open to public use and resulting in public accommodation, but nothing of the kind is here pretended, and it is even doubtful whether its sole utility to the builders was anything other than as an obstruction. We ought not, therefore, to deem it a bar to this proceeding.

It is further objected, on behalf of the appellant corporation, that no effort was made to agree with it before the proceedings were instituted. Proof was given of an attempt to settle with the land-owner lessor, and its failure. That failure made a resort to the court and an appraisal of damages necessary, and its distribution among the different interests could not be determined until those damages were ascertained. The proof established that the strip of land sought to be taken could not be acquired by agreement, and that was sufficient without showing a negotiation with the lessee, who could not give the title and right required.

We think there was no error in the order, and that it should be affirmed.

All concur.

Order affirmed.